**Bruce A. Rubin, P.C.**, OSB No. 763185
bruce.rubin@millernash.com
**Naomi Levelle-Haslitt**, OSB No. 075857
naomi.levelle.haslitt@millernash.com
MILLER NASH LLP
3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, Oregon  97204
Telephone:  (503) 224-5858
Facsimile:  (503) 224-0155

　　Attorneys for Defendants Southern Oregon
　　University, Oregon University System, Mary
　　Cullinan, and George Pernsteiner

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| **RONALD H. KRAMER**, | Case No. 1:13-cv-00340-CL |
| Plaintiff, | |
| v. | **MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE CLAIMS UPON WHICH RELIEF CAN BE GRANTED** |
| **SOUTHERN OREGON UNIVERSITY**, a public university; **OREGON UNIVERSITY SYSTEM**, a public university system; **MARY CULLINAN**; and **GEORGE PERNSTEINER**, | |
| Defendants. | |

PDXDOCS:1992573.3
MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (503) 224-5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

# TABLE OF CONTENTS

Page

INTRODUCTION .......................................................................................................... 1

1. The First Claim for Relief fails because there is no private right of action ........... 1

2. The Second Claim for Relief fails because the University cannot interfere with a contract to which it is a party or the source of the right to employment, and neither Cullinan nor Pernsteiner may be sued under the Oregon Tort Claims Act or Oregon Common Law ................................................ 3

    (a) No institutional liability ................................................................. 3

    (b) No individual liability ..................................................................... 6

        (i) Oregon Tort Claims Act ................................................... 6

        (ii) Oregon Common Law ...................................................... 8

3. The Third Claim for Relief under 42 U.S.C. § 1983 fails for several reasons ........................................................................................................... 10

    (a) Introduction ................................................................................. 10

    (b) No facts are alleged to show a violation of the Equal Protection Clause ........................................................................................... 11

    (c) No facts are alleged to show a violation of due process ......................... 12

    (d) The complaint does not allege any other constitutional violations .......... 15

    (e) The complaint fails to allege sufficient actions by Cullinan or Pernsteiner to make them liable under Section 1983 .............................. 15

    (f) Cullinan and Pernsteiner should be dismissed because Section 1983 creates no liability for persons sued in their official capacities ...... 16

    (g) Cullinan and Pernsteiner have qualified immunity requiring dismissal ........................................................................................ 16

CONCLUSION ........................................................................................................... 18

Page ii -    Memorandum in Support of Defendants' Motion to Dismiss For Failure to State Claims upon Which Relief Can Be Granted

PDXDOCS:1992573.3

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (503) 224-5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

# TABLE OF AUTHORITIES

CASES                                                                                         PAGE

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)................................................. 15-16

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)........................................... 10-11, 15

*Bob Godfrey Pontiac, Inc. v. Roloff*,
    291 Or. 318, 630 P.2d 840 (1981) ....................................................................................... 2

*Chappell v. Mandeville*,
    No. 09-16251, 2013 WL 364203 (C.A.9 (Cal.)) (Jan. 31, 2013)...................................... 11, 17

*Clark v. Jeter*,
    486 U.S. 456, 108 S. Ct. 1910, 100 L. Ed. 2d 465 (1988)...................................................... 11

*Davis v. Scherer*,
    468 U.S. 183, 104 S. Ct. 3012, 82 L. Ed. 2d 139 (1984)....................................................... 17

*Dusenbery v. United States*,
    534 U.S. 161, 122 S. Ct. 694, 151 L. Ed. 2d 597 (2002)....................................................... 14

*Harlow v. Fitzgerald*,
    457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)....................................................... 18

*Hunter v. City of Eugene*,
    309 Or. 298, 787 P.2d 881 (1990) ........................................................................................ 2

*Johnson v. Oregon Stevedoring Co., Inc.*,
    128 Or. 121, 270 P. 772 (1928) ............................................................................................ 3

*Lewis v. Oregon Beauty Supply Co.*,
    302 Or. 616, 733 P.2d 430 (1987) ........................................................................................ 4

*Livingston v. Metropolitan Pediatrics, LLC*,
    234 Or.App. 137, 227 P.3d 796 (2010)................................................................................. 2

*Lumbreras v. Roberts*,
    319 F. Supp. 2d 1191, *aff'd* 156 Fed.Appx. 952, 2005 WL 3304174 (C.A.9 (Or.))........ 6-7, 16

Page iii -    Memorandum in Support of Defendants' Motion to Dismiss For Failure to State
              Claims upon Which Relief Can Be Granted

PDXDOCS:1992573.3

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (503) 224-5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

*Mathews v. Eldridge*,
    424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) ....................................... 14-15

*McGanty v. Staudenraus*,
    321 Or. 532, 901 P.2d 841 (1995) ...................................................................4, 8

*Mitchell v. Forsyth*,
    472 U.S. 511, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985)................................... 16-17

*OSU Student Alliance v. Ray*,
    699 F.3d 1053 (2012)................................................................................. 11, 15-16

*Pinnacle Armor, Inc. v. United States*,
    648 F.3d 708 (9th Cir. 2011) ...................................................................................12

*Pope v. U.S. Postal Serv.*,
    114 F.3d 1144 (Fed. Cir. 1997)................................................................................15

*San Antonio Indep. Sch. Dist. v. Rodriguez*,
    411 U.S. 1, 93 S. Ct. 1278, 36 L. Ed. 2d 16 (1973) ..............................................11

*Serles v. Beneficial Oregon, Inc.*,
    91 Or.App. 697, 756 P.2d 1266 (1988) (Graber, J.) .............................................2-3

*Starr v. Baca*,
    652 F.3d 1202 (9th Cir. 2011) ................................................................................15

*Welch v. Bancorp Mgmt. Advisors, Inc.*,
    296 Or. 208, 675 P.2d 172 (1983) .............................................................................8

*Wellington v. Lane County*,
    Civil No. 09-6063-AA, 2009 WL 2252100 (D. Or 2009) (Aiken,J.) .................8, 10

*Wieber v. FedEx Ground Package System, Inc.*,
    231 Or.App. 469, 220 P.3d 68 (2009)...................................................................4-5

## STATUTES

42 U.S.C. § 1983 ............................................................................................... Passim

Oregon Laws, ch. 597, § 273 .......................................................................................2

ORS 30.265(2) ..............................................................................................................6

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (503) 224-5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

ORS 161.615(3) ...................................................................................................2

ORS 161.635(1)(c) .............................................................................................2

ORS 161.655(1)(d) .............................................................................................2

ORS 659.805 ................................................................................................... 1-2

ORS 659.990(2) .................................................................................................2

**OTHER AUTHORITIES**

OAR 580-021-0050 ...........................................................................................12

OAR 580-021-0055 .......................................................................................13-14

OAR 580-021-0320 ...........................................................................................13

OAR 580-046-0010(1) ........................................................................................5

OAR 580-046-0035(7) ........................................................................................5

United States Constitution ..................................................................................1

PDXDOCS:1992573.3
MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (503) 224-5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

## INTRODUCTION

Plaintiff Ronald H. Kramer is a former employee of Southern Oregon University ("the University") whose annual contract was not renewed. That contract permitted nonrenewal without cause. Kramer's position with the University as Executive Director of Jefferson Public Radio (a radio network belonging to the University) required that he also serve as Executive Director of a fundraising organization, Jefferson Public Radio Foundation ("the Foundation"). This requirement is authorized by an Oregon Administrative Rule.

There are five claims for relief alleged in the complaint. Each one appears to be alleged against all defendants—not just the University, but also Oregon University System, Mary Cullinan (President of the University), and George Pernsteiner (Chancellor of defendant Oregon University System). The motions before the court seek dismissal of the first three claims for relief against all defendants.

This action was removed from state court to this court because the third claim for relief seeks to allege claims under 42 U.S.C. § 1983 for violations of the rights guaranteed under the United States Constitution.

## 1. The First Claim for Relief fails because there is no private right of action.

The first claim for relief seeks to allege a claim for blacklisting under ORS 659.805, based on allegations that a settlement agreement entered into between the University and the Foundation restricts Kramer's future opportunities for employment with the Foundation. This claim should be dismissed because there is no private right of action for an alleged violation of ORS 659.805, a criminal statute that states:

> (1) No corporation, company or individual shall blacklist or publish, or cause to be blacklisted or published, any employee, mechanic or laborer discharged by such corporation, company or individual, with intent and for the purpose of preventing such employee, mechanic or laborer from engaging in or securing similar or other employment from any other corporation, company or individual.

Page 1 -    Memorandum in Support of Defendants' Motion to Dismiss For Failure To State
Claims Upon Which Relief Can Be Granted

PDXDOCS:1992573.3                    MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (503) 224-5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

(2) No officer or agent of any corporation or any other person shall, in any manner, conspire or contrive by correspondence or otherwise to prevent an employee discharged by such corporation or such person from securing employment.

The remedy that the Oregon Legislature provided for a violation is contained in ORS 659.990(2), stating:  "Violation of ORS 659.805 by any officer or agent of a corporation or any other person is a Class C misdemeanor."  Conviction carries a sentence of up to 30 days imprisonment (ORS 161.615(3)) and a fine of up to $1,000 for a corporate defendant (ORS 161.655(1)(d)) and $1,250 for an individual defendant (ORS 161.635(1)(c)).

In *Livingston v. Metropolitan Pediatrics, LLC*, 234 Or.App. 137, 140 n. 2, 227 P.3d 796 (2010), the court pointed out that violation of ORS 659.805 is a criminal offense, and stated:  "We note that no statute authorizes a civil action for a violation of ORS 659.805."

Nor may this court imply a private right of action for violation of ORS 659.805. As explained in *Bob Godfrey Pontiac, Inc. v. Roloff*, 291 Or. 318, 327-29, 630 P.2d 840 (1981), a court will not imply a private right of action where a statutory scheme already contains a method for enforcement to achieve a public policy of the state and the legislature could have created a civil liability had it wished to do so (citing several similar cases).  Here, the legislature has created a criminal penalty to enforce the state policy against blacklisting.  *Accord*, *Hunter v. City of Eugene*, 309 Or. 298, 787 P.2d 881 (1990).  Indeed, the 2011 Oregon Legislature had an opportunity in 2011 to create a private right of action when, instead, it increased the criminal fines for violations of ORS 659.805 from a maximum of $50 to $1,000 for corporations and $1,250 for individuals.  *See* Oregon Laws, ch. 597, § 273.

In *Serles v. Beneficial Oregon, Inc.*, 91 Or.App. 697, 703, 756 P.2d 1266, 1270 (1988) (Graber, J.), the court applied these principles to reject an assertion that there could be a private right of action for violation of a statute prohibiting certain false, misleading, or deceptive statements by a consumer finance company:

Page 2 -    Memorandum in Support of Defendants' Motion to Dismiss For Failure To State Claims Upon Which Relief Can Be Granted

PDXDOCS:1992573.3                MILLER NASH LLP
                                ATTORNEYS AT LAW
                          TELEPHONE: (503) 224-5858
                          3400 U.S. BANCORP TOWER
                            111 S.W. FIFTH AVENUE
                          PORTLAND, OREGON  97204

Finally, plaintiffs alleged that defendant violated ORS 725.060 and that a private cause of action lies to remedy that violation.  Violations of ORS 725.060 do not give rise to a private cause of action.  If, as here, a statute is silent as to private enforcement rights, courts may recognize a private claim only when it is necessary to carry out the policy of the statute.  *Bob Godfrey Pontiac v. Roloff*, 291 Or. 318, 332, 630 P.2d 840 (1981); *Miller v. City of Portland*, 288 Or. 271, 278, 604 P.2d 1261 (1980).  Because the director of the Department of Insurance and Finance has authority to enforce ORS 725.060, *see* ORS 725.910, there is no need to recognize a private cause of action to carry out the statutory policy.  *See Farris v. U.S. Fid. and Guar. Co.*, 284 Or. 453, 458, 587 P.2d 1015 (1978).  Accordingly, plaintiffs have not stated a claim for relief under ORS 725.060.

*Serles*, 91 Or.App. at 703 (footnotes omitted).

Eighty five years ago, in *Johnson v. Oregon Stevedoring Co., Inc.*, 128 Or. 121, 270 P. 772 (1928), the court considered whether a previous version of the blacklisting statute was a violation of an employer's constitutional rights to select or discharge employees.  The employer did not raise whether the statute created a private right of action, and the court assumed that it did without analysis, as it proceeded to reverse the trial court because of an improper jury instruction regarding punitive damages.  Given the more recent case law cited above and the amendments to the blacklisting statute that never have created a private right of action, the Oregon Supreme Court would not hold there is one.

2.    **The Second Claim for Relief fails because the University cannot interfere with a contract to which it is a party or the source of the right to employment, and neither Cullinan nor Pernsteiner may be sued under the Oregon Tort Claims Act or Oregon Common Law.**

(a)    No institutional liability.

The second claim for relief seeks to allege interference with Kramer's existing and prospective business relationship with the Foundation.  (*See* Compl. ¶ 42.)  But Kramer admits, through the factual allegations that he incorporates into this claim for relief, that his position with the Foundation existed because of his employment agreement with the University.  As explained below, this claim fails because Kramer's employment with the University is the source of any

Page 3 -    Memorandum in Support of Defendants' Motion to Dismiss For Failure To State Claims Upon Which Relief Can Be Granted

PDXDOCS:1992573.3                                MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (503) 224-5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

rights he ever had to employment with the Foundation.  A party to a contract cannot be liable for allegedly interfering with that contract.

*McGanty v. Staudenraus,* 321 Or. 532, 535, 901 P.2d 841, 844 (1995), is the leading case on interference with contractual relations.  The elements of that tort include a requirement that there be interference with a relationship by a third party:

> To state a claim for intentional interference with economic relations, a plaintiff must allege each of the following elements:  (1) the existence of a professional or business relationship (which could include, *e.g.*, a contract or a prospective economic advantage), (2) intentional interference with that relationship, (3) by a third party, (4) accomplished through improper means or for an improper purpose, (5) a causal effect between the interference and damage to the economic relationship, and (6) damages.

As explained in *Lewis v. Oregon Beauty Supply Co.*, 302 Or. 616, 622, 733 P.2d 430, 434 (1987), the "salient inquiry" in any interference claim is whether a defendant's tortious conduct caused a third person to discontinue the relationship with the plaintiff.

Oregon law does not extend third party status to a business that is inextricably linked to a plaintiff's former employer.  *Wieber v. FedEx Ground Package System, Inc.*, 231 Or.App. 469, 220 P.3d 68 (2009), concerned a former driver for FedEx seeking damages as a result of his termination.  The driver sought to assert an interference claim based on allegations that his relationship with FedEx customer accounts had been interfered with.  The court held that the interference claims failed as a matter of law because there was not a third party involved; in other words, FedEx was "not a third party to plaintiffs' customer accounts because FedEx was a party to plaintiffs' relationship to those customers." 231 Or. at 477.  As the court explained:

> Here, FedEx was not a third party to plaintiffs' relationships with the customers in the service area designated by FedEx and plaintiffs under their agreement.  Plaintiffs' relationship with those customers was inextricably linked to plaintiffs' contractual relationship with FedEx:  Plaintiffs picked up and delivered packages from those customers on behalf of FedEx under the terms of plaintiffs' agreement with FedEx.  Plaintiffs did not present any evidence at trial

Page 4 -    Memorandum in Support of Defendants' Motion to Dismiss For Failure To State Claims Upon Which Relief Can Be Granted

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (503) 224-5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

that plaintiffs had any economic relationship with those customers outside of plaintiffs' contractual relationship with FedEx.  In addition, plaintiffs did not present any evidence that plaintiffs had any continuing relations with those customers following the termination of plaintiffs' agreement with FedEx. Although plaintiffs claimed a proprietary interest in their customer accounts under the terms of their agreement with FedEx, plaintiffs' *rights* to those customer accounts did not survive the termination of the agreement with FedEx.  There is no evidence in the record that would support a finding that FedEx was a third party to any of plaintiffs' economic relationships.  The trial court therefore erred in denying FedEx's motion for a directed verdict on the intentional interference with economic relations claim.

*Wieber*, 231 Or. at 480 (emphasis in original).

The same is true in the facts alleged in the complaint in this case.  Kramer's only connection with the Foundation was because of his job description with the University requiring that "he serve as Executive Director of that Foundation" (Compl. ¶ 9), a status that "was approved in a written contract under OAR 580-046-0035(7) between [the Foundation] and [the University]." (Compl. ¶ 10.[1])  Moreover, that contract "required in Section 6.01 that [the

---

[1] OAR 580-046-0035(7) provides:

(7) Institution Contract with Foundation:

> (a) An institution may provide pursuant to a written contract limited and reasonable support to the foundation, including but not limited to the cost of utilities and janitorial services and all or part of the salary and related personnel costs of staff support, from funds otherwise available to the institution.  As used in these rules, staff support is assistance by any personnel whose responsibilities and activities exclude policy making and other functions that would nullify the independence of the foundation from the institution.

> (b) An institution providing support to a foundation shall contract with the foundation regarding the terms and conditions for implementing OAR 580-046-0010(1) and subsection (7)(a) of this rule and may contract for other purposes consistent with these rules. Any such contract and amendments thereto shall:

>> (A) Accurately and fully describe the extent of such use and support and the consideration therefor;

>> (B) Be reviewed by an Assistant Attorney General assigned to the Oregon Department of Higher Education; and

---

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (503) 224-5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

University] provide [the Foundation] with 'employees to perform managerial … services for [the Foundation]." (Compl. ¶ 10.)

The list of alleged interferences in ¶ 43 of the complaint are tied to Kramer's employment by the University. In other words, the University was the source of Kramer's rights, if any, to also serve the Foundation. As a result, the claim for interfering with these rights should be dismissed.

(b)    <u>No individual liability</u>.

The individual defendants are not liable for interference with contractual relations for two reasons: First, they are protected by the Oregon Tort Claims Act. Second, under Oregon case law, they are not liable because their actions were taken in the course and scope of their employment with at least some intent to benefit their employer.

(i)    Oregon Tort Claims Act.

ORS 30.265(2) requires that only the public entity be a defendant with respect to claims against individual officers acting in their official capacities. ORS 30.265(2) states:

> The sole cause of action for a tort committed by officers, employees or agents of a public body acting within the scope of their employment or duties and eligible for representation and indemnification under ORS 30.285 or 30.287 is an action under ORS 30.260 to 30.300. The remedy provided by ORS 30.260 to 30.300 is exclusive of any other action against any such officer, employee or agent of a public body whose act or omission within the scope of the officer's, employee's or agent's employment or duties gives rise to the action. No other form of civil action is permitted.

*Accord*, *Lumbreras v. Roberts*, 319 F. Supp. 2d 1191, 1213-14, *aff'd* 156 Fed.Appx. 952, 2005 WL 3304174 (C.A.9 (Or.)). In that case, the court dismissed a state law claim for interference

---

(C) Be approved by the president and by the Chancellor or their respective designees.

(c) Funds received by an institution because of a contract with a foundation shall be placed in a current restricted account that is not a depository for donated or gift money.

PDXDOCS:1992573.3
MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (503) 224-5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

with contract against state officials based on the Oregon Tort Claims Act in logic that applies just as well to this case:

> The court concludes that plaintiffs' state law claims are barred by the Eleventh Amendment. This conclusion is compelled by the requirements of the Oregon Tort Claims Act. That Act provides that the "sole cause of action for any tort of officers, employees or agents of a public body acting within the scope of their employment or duties and eligible for representation and indemnification under ORS 30.285 or 30.287 shall be an action against the public body only." ORS 30.265. It is undisputed that defendants are state officials and eligible for legal representation and indemnification within the scope of the relevant statutory provisions. Thus defendants request that the court substitute the state as the party being sued for interference of economic relationship.
>
> To determine whether officials were acting "within the scope of their employment or duties" for purposes of the Tort Claims Act, a court should consider the following factors: (a) whether the conduct was of the kind the defendant was hired to perform, (b) whether the conduct occurred within an authorized time and space, and (c) whether the defendant was motivated at least in part by a purpose to serve the employer. See *Center for Legal Studies, Inc. v. Lindley,* 64 F.Supp.2d 970, 974 (D.Or.1999) (citing *Brungardt v. Barton,* 69 Or.App. 440, 443, 685 P.2d 1021 (1984)).
>
> In the case at bar, the conduct about which plaintiffs complain plainly was the type of conduct defendants were hired to perform. The claims are based on defendants' alleged conduct associated with investigating and prosecuting a license renewal. There is no indication defendants acted outside any "authorized time or space." Finally, largely for the reasons discussed *supra,* the more reasonable inference to be drawn from the record is that defendants' conduct was motivated at least in part by a purpose to serve BOLI and the state. Indeed, as discussed, Cunningham's various negative statements about Lumbreras—plaintiffs' primary evidence regarding defendants' motivation—were essentially judgments relating to credibility and the merits of the case or statements made in the course of discussing the case. Thus her statements were within the scope of her "employment or duties." See ORS 30.265; see, e.g., *Center for Legal Studies,* 64 F.Supp.2d at 975–76 (substituting state for named state agency official, even though plaintiffs alleged official "was motivated by his personal agenda," because sufficient evidentiary support for that allegation could not "be inferred from the record").

*Lumbreras*, 319 F.Supp.2d at 1213-14.

PDXDOCS:1992573.3                    MILLER NASH LLP
                                     ATTORNEYS AT LAW
                               TELEPHONE: (503) 224-5858
                               3400 U.S. BANCORP TOWER
                               111 S.W. FIFTH AVENUE
                               PORTLAND, OREGON  97204

Nothing in the complaint suggests that Cullinan or Pernsteiner acted outside of the scope of their respective job duties.  As a result, the state law tort claims against them should be dismissed.

    (ii)  Oregon Common Law.

    Even if Cullinan and Pernsteiner were not entitled to protection under the Oregon Tort Claims Act, the allegations fail to state a claim against them for interference with contractual relations under Oregon common law.  As explained in *McGanty*, 321 Or at 537, the principle discussed above (namely "the general principle that a party to a contract cannot be liable for interference with that contract" also protects individuals who are officers or employees of the entity accused of the tort, so long as the individuals act for the benefit of their employer and within the scope of their authority.  *Id.* at 537-43.  *Accord*, *Welch v. Bancorp Mgmt. Advisors, Inc.*, 296 Or. 208, 216-17, 675 P.2d 172 (1983).  In *McGanty*, the plaintiff alleged that the individual acted within the course and scope of his employment, which was fatal to the interference claim.  In this case, Kramer may not have admitted that in a conclusory fashion as in *McGanty*, *see* 321 Or at 538; nevertheless, the only conclusion one can draw from the facts alleged in the complaint as a whole is that Cullinan and Pernsteiner were acting in course and scope of their employment.  *See, e.g.*, *Wellington v. Lane County*, Civil No. 09-6063-AA, 2009 WL 2252100 (D. Or 2009) (Aiken,J.).

    In *Wellington*, the interference claim was asserted by a terminated Lane County employee against his former supervisor.  The court dismissed the claim based on the same arguments presented here:  the individual was not a permitted defendant under the Oregon Tort Claims Act, and in any event he was a "third party":

> Defendants next move to dismiss plaintiff's intentional interference with economic relations (IIER) claim under a two-step analysis.  First, defendants argue that the plain text of the Oregon Tort Claims Act (OTCA) requires the dismissal of all claims against the individual defendants and the substitution of the County as the sole defendant.  Second, defendants contend that because an IIER claim cannot be maintained by an employee against his employer for interfering

Page 8 -  Memorandum in Support of Defendants' Motion to Dismiss For Failure To State Claims Upon Which Relief Can Be Granted

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (503) 224-5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

with the employment relationship, the IIER claim against the County must be dismissed. I agree.

To state a claim for IIER under Oregon law, a plaintiff must allege: "(1) the existence of a professional or business relationship . . ., (2) intentional interference with that relationship, (3) by a third party, (4) accomplished through improper means or for an improper purpose, (5) a causal effect between the interference and damage to the economic relationship, and (6) damages." *McGanty v. Staudenraus*, 321 Or. 532, 535, 901 P.2d 841, 844 (1995). The tort serves "as a means of protecting contracting parties against interference in their contracts from *outside* parties." Id. at 536 (emphasis in original). In a typical IIER claim, the person interfering is a "complete stranger to the contractual relationship." *Wampler v. Palmerton*, 250 Or. 65, 74, 439 P.2d 601, 606 (1968). In general, then, employees are shielded from liability for interference with economic relations between their employing corporation and other individuals, so long as the employee is "acting within the scope of his employment and for [the] benefit of the corporation." *Id.* at 75.

Defendants contend, and plaintiff concedes, that, under the OTCA, the "public body" (here, the County) must be substituted for the individually named defendants Rockstroh, Utecht, Fleenor and Howard in plaintiff's IIER claim. FN2 Defendants argue that once this substitution is made, the IIER claim must necessarily be dismissed due to the absence of the necessary third party. I agree that the plain text of the OTCA requires substitution of Lane County for the individual defendants if those defendants were acting within the scope of their employment duties. There is no indication in either the complaint or plaintiff's response brief that plaintiff alleges defendants Rockstroh, Utecht, Fleenor or Howard acted outside the scope of their employment duties. Therefore, defendants' motion to substitute the County for individual defendants Rockstroh, Utecht, Fleenor and Howard under the OTCA is granted, and the motion to dismiss plaintiff's resultant IIER claim against the County is dismissed for failure to state a claim.

FN2. The OTCA provides, in pertinent part, that "[t]he sole cause of action for any tort of officers, employees or agents of a public body acting within the scope of their employment ... shall be an action against the public body only." Or.Rev.Stat. § 30.265(1). Plaintiff does not dispute that the plain language of the statute requires substitution in this case, but rather argues that the effect of this substitution would be an unconstitutional emasculation of the remedy available at common law. However, defendants correctly point out that even without substitution, an IIER claim against individual defendants acting within the scope of their employment duties fails, because such defendants do not satisfy the "third party" element of an IIER claim. *See McGanty v. Staudenraus*,

Page 9 -    Memorandum in Support of Defendants' Motion to Dismiss For Failure To State Claims Upon Which Relief Can Be Granted

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (503) 224-5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

> 321 Or. at 538 ("[W]hen an employee is acting in the scope of the
> employee's employment, the employee is acting as the employer ... [and]
> is not a third party for the tort of intentional interference with economic
> relations.") Therefore, plaintiff's constitutional argument is moot and
> inappropriate to consider here."

*Wellington*, 2009 WL 2252100 at *3.

For these same reasons, the claim for interference with contractual relations against Cullinan and Pernsteiner should be dismissed.

### 3.     The Third Claim for Relief under 42 U.S.C. § 1983 fails for several reasons.

    (a)     Introduction.

The third claim for relief is alleged under 42 U.S.C. § 1983 ("Section 1983") for violation of Kramer's civil rights.  The allegations are conclusory, not factual.  Thus, Kramer alleges he "possessed a property interest in his employment . . . and a liberty interest in his reputation, as guaranteed by the Fifth, Fourth and Fourteenth Amendments to the United States Constitution" (Compl. ¶ 50) and that Pernsteiner "deprived Kramer of his property interest in employment, and liberty interest in his occupation denying him equal protection of the law in violation of 42 U.S.C. §1983."  (Compl. ¶ 52.)

Nothing in the complaint, including all of the allegations in Complaint ¶¶ 1-47 incorporated into the third claim for relief, supplies any facts to show lack of due process or violation of equal protection or any other constitutional deprivation.  Instead, Kramer has alleged, in essence, that he grieved the nonrenewal of his employment with the University and that his related employment with the Foundation has ended.

The court is familiar with the standard of review for whether a complaint states a claim upon which relief can be granted.  In this case, the pleading requirements announced in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), are especially germane.  *Twombly* emphasized the need to include sufficient facts in the pleading to give proper notice of the claim and its basis:  "While a complaint attacked by a Rule 12(b)(6)

PDXDOCS:1992573.3

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (503) 224-5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (brackets and internal citations omitted).

As discussed below, Kramer has not alleged any facts that suffice to show a constitutional deprivation, and even had he done so, defendants Pernsteiner and Cullinan are entitled to qualified immunity.

(b)     No facts are alleged to show a violation of the Equal Protection Clause.

*OSU Student Alliance v. Ray*, 699 F.3d 1053 (2012), and *Chappell v. Mandeville*, No. 09-16251, 2013 WL 364203 (C.A.9 (Cal.)) (Jan. 31, 2013), display the analytical template for determining whether Section 1983 liability has been alleged.  First, the court looks to see if the plaintiff has alleged facts that show a violation of a constitutional right.  Then, even if such a right has been alleged, the court determines if individual defendants are liable because they committed the violation in question, or whether they are entitled to qualified immunity because of their limited role or because at the time of their actions the law did not clearly establish that their actions were unconstitutional.  *OSU Student Alliance*, 699 F.3d at 1061; *Chappell*, 2013 WL 364203 at *2.

To allege a violation of the Equal Protection Clause, it is fundamental that the complaint must present facts that the plaintiff is a member of a group subject to different treatment afforded to persons in another group.  *See, e.g.*, *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 93 S. Ct. 1278, 36 L. Ed. 2d 16 (1973).  Nothing in the complaint identifies Kramer's alleged group or the group he would like to be compared with.  As a result, the court cannot even proceed to the next analytical step; namely, whether the classification of Kramer is subject to strict scrutiny, rational basis scrutiny, or some intermediate level of scrutiny.  *See, e.g.*, *Clark v. Jeter*, 486 U.S. 456, 461, 108 S. Ct. 1910, 100 L. Ed. 2d 465 (1988).

PDXDOCS:1992573.3                    MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (503) 224-5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

      (c)     <u>No facts are alleged to show a violation of due process</u>.

For purposes of these motions, defendants assume that Kramer had a right to due process before his employment contract with the University would not be renewed or would be terminated.  His allegations fail because the complaint shows that he received the due process to which he was entitled.

42 U.S.C. § 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

To establish a violation of due process actionable under Section 1983 related to his employment, Kramer must establish that he had a protected property right in his employment and that his property right was infringed upon by the state without sufficient process.  *See Pinnacle Armor, Inc. v. United States*, 648 F.3d 708, 716 (9th Cir. 2011).

OAR 580-021-0050 describes the grievance process that was provided to Kramer.[2]  Kramer acknowledges that he was afforded the right to present grievances.

---

[2]  580-021-0050 Grievance Procedures

(1) The institutions shall adopt, in consultation with faculty advisory committees including female and minority faculty and representatives of certified bargaining units, if any, appropriate grievance procedures, in accordance with the rulemaking procedures of the Administrative Procedure Act.  The grievance procedures shall apply to all unclassified academic employees with faculty rank.

(2) For purposes of this rule and OAR 580-021-0055:

    (a) "Grievance" means a complaint by an academic employee that the employee was wronged in connection with compensation, tenure, promotion or other conditions of employment or the employee's rights were denied as to reappointment;

    (b) "Other conditions of employment" shall include, but not necessarily be limited to: violations of academic freedom; discriminatory employment practices; nondiscriminatory employment practices; and laws, rules, policies, and procedures under which the institution operates.  However, challenges to

---

Page 12 -    Memorandum in Support of Defendants' Motion to Dismiss For Failure To State Claims Upon Which Relief Can Be Granted

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (503) 224-5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

disciplinary actions or procedures shall be raised under OAR 580-021-0320;

(c) "Days" mean calendar days unless expressly designated otherwise.

(3) The institutions' grievance procedures shall:

(a) Set out the details of a grievance procedure appropriate to the institution;

(b) Include both informal and formal steps.  The formal steps shall include an appropriate administrator, a faculty committee (at the option of the grievant) and the institution president.  The institution may (at its option) provide a grievance officer.  However, a grievance may be resolved at any step.  In a formal grievance, all complaints, responses and decisions must be in writing;

(c) Establish time limits within which a grievance must be filed and for each step that will permit timely resolution of issues. Informal grievances shall receive a response within 15 days.  In no instance shall the length of time between the presentation of the written grievance and the final institutional decision be more than 180 days, unless agreed to by the grievant. In the event a decision is not made at any level within the designated time limit, the grievant may submit the grievance to the next step;

(d) Provide for a hearing, at the option of the grievant, by a faculty committee selected by the faculty at the institution.

(e) Provide for the appointment by the president of an administrative officer, or officers, (grievance officer) to receive and act upon the recommendations of the faculty committee.  The institution may, alternatively, opt to have the president receive and act upon the recommendations of the faculty committee.

(4) The institution may elect not to proceed with a grievance if the grievant also seeks resolution in another forum.

(5) The institution shall adopt rules of procedure for the faculty committee that allow for:

(a) A meaningful opportunity for the grievant to be heard;

(b) An opportunity for each party to present evidence, argument and rebuttal;

(c) The right to representation for each party at that party's expense;

(d) A hearing open to the public at the option of the grievant to the extent allowed by law;

(e) Written conclusions, based only upon evidence presented at the hearing; and

(f) Access by each party to a complete record of the hearing.

(6) The faculty committee shall make recommendations regarding the disposition of the grievance to the grievance officer or president (depending on the institution's election).

(7) Unless the grievance is resolved at a lower level, the president or grievance officer (depending on the institution's election), shall review the recommendations of the faculty

PDXDOCS:1992573.3

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (503) 224-5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

Compl. ¶¶ 20, 21, 28, 29, 31.  If Kramer had a property interest in his employment, that means only that he had a right to "notice and an opportunity to be heard." *Dusenbery v. United States*, 534 U.S. 161, 167, 122 S. Ct. 694, 151 L. Ed. 2d 597 (2002).  He received both.  (*See* Compl. ¶¶ 20, 21, 28, 29, and 31.)  Kramer does not allege that the grievance process was defective.

A deprivation of property does not entitle someone to a contested trial.  *Mathews v. Eldridge*, 424 U.S. 319, 333-34, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976).  When determining how much process is due in a particular situation, courts consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the

committee, if any, and the president or grievance officer shall issue a decision.

(8) If the president or grievance officer (depending on the institution's election) rejects or modifies the recommendations of the faculty hearing committee, the reasons shall be stated in writing, and a copy provided to the grievant and to the hearing committee.

(9) Where the institution has opted to use a grievance officer, the grievant may appeal the decision of the grievance officer to the president pursuant to OAR 580-021-0055.

(10) Under either option as set forth above, and except as set forth herein, the decision of the president shall be final, and shall be an exhaustion of grievant's administrative remedies with the institution and the State Board of Higher Education.  If the grievance involves the president or where the president is the immediate supervisor of the grievant, then the appeal, set forth in section 9, shall be to the Chancellor of the Oregon University System (all other provisions of this rule shall otherwise apply).

(11) Nothing contained in this administrative rule shall be construed to limit the right of the State Board of Higher Education to make such inquiry and review into personnel actions as it may from time to time deem, in its sole discretion, appropriate.

(12) Where collective bargaining agreements or administrative rules exist at an institution in which grievance procedures are specified and such procedures exceed the standards in this rule, such agreements or administrative rules shall control, to the extent not inconsistent with the rule.

(13) After consultation with the appropriate faculty committees and approval of the Chancellor's Office, each institution shall adopt its rules by October 1, 2001.

(14) Each institution shall report annually to the Board beginning July 2002, on the number, basis and outcome of all formal grievances filed under the rules herein required.

PDXDOCS:1992573.3

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (503) 224-5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

The opportunity to submit a written response can be sufficient process. *See Pope v. U.S. Postal Serv.*, 114 F.3d 1144, 1148 (Fed. Cir. 1997) (holding that a postal worker had sufficient process after he was demoted because he was notified of the charges in sufficient detail to write a lengthy response).

      (d)     <u>The complaint does not allege any other constitutional violations</u>.

      There are no invocations of any other constitutional rights in the complaint—at least not any that are accompanied by factual allegations that would meet the pleading requirements of *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). As explained in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011), "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation."

      This is not a case invoking First Amendment rights, as in *OSU Student Alliance*. Complaint ¶ 44 alleges that publicity regarding the dispute between the University and the Foundation has "been widely covered by the news media in Southern Oregon as a matter of public concern," but that is irrelevant. There is no allegation that Kramer spoke about, let alone had a right to speak about, a matter of public concern as did the plaintiff in *OSU Student Alliance*.

      (e)     <u>The complaint fails to allege sufficient actions by Cullinan or Pernsteiner to make them liable under Section 1983</u>.

      A complaint must allege facts that "ties the constitutional violations to the individual defendants" to establish liability of a state official. *OSU Student Alliance*, 699 F.3d at 1069. As explained in *Iqbal*, "[E]ach government official, his or her title notwithstanding, is

Page 15 -   Memorandum in Support of Defendants' Motion to Dismiss For Failure To State Claims Upon Which Relief Can Be Granted

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (503) 224-5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

only liable for his or her own misconduct."  556 U.S. at 677.  As explained in *OSU Student Alliance*, after *Iqbal*, "a supervisor's liability, like any governmental official's liability, depends first on whether he or she breached the duty imposed by the relevant constitutional provision." *OSU Student Alliance*, 699 F.3d at 1073 n. 15.

As discussed above, there are no facts to show any violation of equal protection or due process.  If anything, the complaint shows that Kramer received due process, but dislikes the conclusions reached through that process.

(f)    Cullinan and Pernsteiner should be dismissed because Section 1983 creates no liability for persons sued in their official capacities.

As explained in *Lumbreras*, 319 F. Supp. 2d at 1202, there is no liability under Section 1983 when a defendant is sued in his or her official capacity:

The capacity in which defendants are sued is crucial because Section 1983 allows only "persons" to bring constitutional claims.  See 42 U.S.C. § 1983.  The Supreme Court has held that government actors who are sued in their official capacities do not qualify as "persons" for purposes of Section 1983.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70–71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).  Suits against state officials come within Section 1983's scope only when they are sued in their "personal capacities."  See *id.*

Here, the complaint is silent as to whether Cullinan or Pernsteiner are sued in their individual capacities.  Although there is a presumption that individuals are sued in their personal capacities under Section 1983 when the complaint is silent (*see Lumbreras*, 319 F. Supp. 2d at 1203), the facts alleged in the complaint overcome that presumption.  Kramer has alleged that Cullinan engaged in conduct as the University's president and Pernsteiner is liable because he is the Chancellor.  Compl., *passim*.

(g)    Cullinan and Pernsteiner have qualified immunity requiring dismissal.

Even if Kramer had a property right in having his appointment renewed, Cullinan and Pernsteiner are entitled to qualified immunity.  *See Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985).  A public official performing discretionary acts is immune from suit under Section 1983 unless his or her actions were in clear violation of a well-

Page 16 -    Memorandum in Support of Defendants' Motion to Dismiss For Failure To State Claims Upon Which Relief Can Be Granted

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (503) 224-5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

established federal law or constitutional right.  *Mitchell*, 472 U.S. at 526.  A public official's immunity from suit not only is a defense to an action, but also protects the official from the inconvenience of a trial and the burdens of litigation.  Indeed, as pointed out in *Chappell*, 2013 WL 364203 at *17 n. 4, qualified immunity exists even where the court decides that conduct did amount to a constitutional violation, as long as the purported right was not clearly established at the time in question.

  The complaint falls short of the allegations that would be needed to meet this standard.  Cullinan is alleged to be the current President of the University (Compl. ¶ 4), to have responded to an audit report looking into relationships between the University and the Foundation requested by the Oregon University System (Compl. ¶ 14), to have issued restrictions on Kramer (her subordinate at the University) against entering into certain contracts on behalf of the Foundation but permitting him to remain as the Executive Director of the Foundation (Compl. ¶ 16), and to have agreed with the final recommendations of the grievance committee to conclude Kramer's administrative remedies with the University and the Oregon University System.  Pernsteiner is alleged to be the current Chancellor of the Oregon University System (Compl. ¶ 5), and to have directed that there be an audit by the Internal Audit Division of the Oregon University System that lead to the above referenced Audit Report.  (Compl. ¶ 12.)  There are no allegations that either Cullinan or Pernsteiner were members of the grievance committees or witnesses before those committees in Kramer's grievances.  (*See* Compl. ¶¶ 20, 21, 28, 29, and 31.)  More importantly, there are no allegations of facts to suggest that Cullinan or Pernsteiner were aware of a clearly established right that they then proceeded to violate.  There is no basis for Kramer to overcome the qualified immunity to which the individual defendants are entitled.

  Government officials must be able to fulfill their duties without "fear of harassing litigation" and they can do so only "if they reasonably can anticipate when their conduct may give rise to liability for damages and only if unjustified lawsuits are quickly terminated." *Davis v. Scherer*, 468 U.S. 183, 195, 104 S. Ct. 3012, 82 L. Ed. 2d 139 (1984).  When

Page 17 - Memorandum in Support of Defendants' Motion to Dismiss For Failure To State Claims Upon Which Relief Can Be Granted

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (503) 224-5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

government officials perform discretionary functions, they "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would not have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982).

## <u>CONCLUSION</u>

Plaintiff's first, second, and third claims for relief should be dismissed with prejudice.

DATED this 27th day of February, 2013.

MILLER NASH LLP

s/ Bruce A. Rubin
_____
Bruce A. Rubin, P.C., OSB No. 763185
bruce.rubin@millernash.com
Naomi Levelle-Haslitt, OSB No. 075857
naomi.levelle-haslitt@millernash.com
Telephone: (503) 224-5858
Fax: (503) 224-0155

Attorneys for Defendants Southern Oregon University, Oregon University System, Mary Cullinan, and George Pernsteiner

PDXDOCS:1992573.3

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (503) 224-5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

I hereby certify that I served the foregoing Memorandum in Support of

Defendants' Motion to Dismiss For Failure To State Claims Upon Which Relief Can Be Granted

on:

> Mr. Richard S. Yugler
> Landye Bennett Blumstein LLP
> 1300 S.W. Fifth Avenue, Suite 3500
> Portland, Oregon  97201
> Facsimile:  (503) 224-4133
> E-mail:  ryugler@lbblawyers.com
>
> *Attorney for Plaintiff Ronald H. Kramer*

by the following indicated method or methods on the date set forth below:

☒ **CM/ECF system transmission.**

☐ **E-mail.**  As required by Local Rule 5.2, any interrogatories, requests for production, or requests for admission were e-mailed in Word or WordPerfect format, not in PDF, unless otherwise agreed to by the parties.

☐ **Facsimile communication device.**

☐ **First-class mail, postage prepaid.**

☐ **Hand-delivery.**

☐ **Overnight courier, delivery prepaid.**

DATED this 27th day of February, 2013.

s/  Bruce A. Rubin
Bruce A. Rubin, P.C.
Oregon State Bar No. 763185
Of Attorneys for Defendants Southern
Oregon University, Oregon University
System, Mary Cullinan, and George
Pernsteiner

Page 1 -   Certificate of Service

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (503) 224-5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204-3699