IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

RONALD H. KRAMER,

       Plaintiff,

    v.

SOUTHERN OREGON UNIVERSITY, a
public university, OREGON
UNIVERSITY SYSTEM, a public
university system, MARY CULLINAN,
GEORGE PERNSTEINER,

       Defendants.

No. 1:13-cv-00340-PA

**ORDER**

**PANNER, District Judge:**

This case comes before me on Defendants' Motion to Dismiss
Plaintiff's Third and Fourth Claims for Relief (#39).  Defendants'
Motion is DENIED.

## Background

These are the allegations as set forth in Plaintiff's Amended

1 - ORDER

Complaint (#27):

Plaintiff in this action is the former executive director (ED) of both Jefferson Public Radio (JPR) and the Jefferson Public Radio Foundation (JPRF). JPR is a group of radio stations which are managed by Southern Oregon University (SOU). JPRF is an Oregon not-for-profit corporation, independent of SOU and recognized as an "institution foundation."

Defendants in this action are SOU, an Oregon public university; the Oregon University System (OUS), a public entity governing the public university system of Oregon; Mary Cullinan, the President of SOU; and George Pernsteiner, the Chancellor of OUS.

Plaintiff was employed by SOU for 37 years prior to his termination on June 30, 2012. He served as a full-time executive employee "eligible for annual renewal." Renewable employees are considered renewed for employment in a subsequent fiscal or academic year on the same terms unless they receive notice of non-renewal 90 days before the termination.

Plaintiff's contract with SOU provided that he serve as ED for JPR and serve as SOU "liaison to the JPR Foundation as Executive Director of that Foundation." JPRF's Bylaws required that one of its board positions shall be automatically filled by the ED of JPR. Plaintiff's dual status as ED of both JPR and JPRF was approved in a written contract between JPRF and SOU entitled Contract to Exchange Services (CES). On August 1, 2011,

2 - ORDER

Plaintiff's appointment as ED of JPR was renewed for 2011-2012 without modification.

In 2007, OUS initiated an inquiry of JPRF and JPR.  On September 22, 2011, the Internal Audit Division of OUS issued a Memorandum Asset & Liability Review (the "Review").

The Review examined Plaintiff's dual role as ED of JPR and JPRF and determined that the dual role has resulted in "recurring actual or apparent conflicts of interest . . . [and] presents a potential conflict of interest."  The Review recommended that SOU's President eliminate the conflict of interest by preventing SOU employees from serving in both capacities.  President Cullinan agreed to develop a conflict of interest elimination plan by November 30, 2011, and to eliminate the conflict by June 30, 2012.

On February 23, 2012, Plaintiff inquired about the status of President Cullinan's potential plan to deal with his dual status as ED of JPR and JPRF.  President Cullinan informed Plaintiff that she did not believe he should leave SOU, praised his work, and assured him that his employment with SOU was secure.

On February 28, 2012, SOU proposed to the JPRF board that Plaintiff should voluntarily resign his position at SOU and become a sole employee of JPRF in order to eliminate the potential conflict of interest.  Plaintiff learned of this proposal in mid-March 2012.

On March 21, 2012, Plaintiff submitted a grievance to SOU, complaining that SOU's February 28 proposal was improper, that

3 - ORDER

SOU's failure to timely provide a plan, revise the CES, or exercise its authority to revise his job description to eliminate his dual role has harmed his employment status and reputation because his dual role "is now apparently being raised as a basis for terminating my employment." Plaintiff's March 21 grievance was rejected by SOU on the grounds that it did not involve any personnel action.

On March 22, 2012, SOU through its attorneys at Miller Nash, LLP, threatened JPRF and JPRF's board members, including Plaintiff, with a lawsuit holding each of them "personally liable" with recovery of damages from their "personal assets." SOU claimed that Plaintiff breached fiduciary duties owed to SOU, tortiously interfered with SOU employees, violated standards of conduct for officers of Oregon not-for-profit corporations, and engaged in impermissible direct and indirect conflicts of interest as a result of his dual role as ED of JPR and JPRF. The written threats were delivered at a public meeting of the JPRF Board and in the presence of the media. The accusations were subsequently reported in "numerous media accounts."

On March 23, 2012, President Cullinan informed Plaintiff in writing that his appointment as ED of JPR "may not be renewed for the 2012-2013 fiscal year," and "[a]s a result your employment with [SOU] may terminate on June 30, 2012."

On June 8-9, JPR and JPRF engaged in direct negotiations. On June 8, during the mediation process, Plaintiff received oral

4 - ORDER

notice that SOU deemed his employment terminated on June 30. Plaintiff replied that he considered his employment status continued through the 2012-2013 fiscal year because President Cullinan's March 23 letter failed to comply with notice procedures.

On June 25, President Cullinan sent Plaintiff another letter stating that SOU would not offer him renewed appointment for the next fiscal year and that his employment with SOU would end on June 30, 2012.

On July 1, SOU named Paul Westhelle to serve as Interim Executive Director of both JPR and JPRF in the same dual capacity previously held by Plaintiff, subject to an extended term of the CES without other modification.

On July 2, Plaintiff grieved his termination pursuant to SOU policies and procedures, but was not allowed to grieve the contents of the Review or the Miller Nash letter. SOU limited Plaintiff's grievance hearing to "the decision not to review [his] employment contract, and specifically, the notice provided by the University which [Plaintiff] allege was untimely."

On August 17, a grievance committee at SOU determined that neither President Cullinan's March 23 letter, nor her oral notice of June 8 complied with SOU policies and procedures. The grievance committee recommended that SOU provide Plaintiff with 90 days salary and benefits, ending September 29, 2012.

On August 22, SOU and JPRF entered in to a Binding Settlement

5 - ORDER

Agreement in which SOU and JPRF mutually agreed to release each
other and all of their past and present officers, directors, and
employees except Plaintiff.  The Agreement expressly provided that
Plaintiff might serve as a volunteer or independent consultant to
JPRF, but was not eligible to be an officer, director, advisory
board member, or employee of JPRF or its affiliates.

On September 22, President Cullinan agreed with the
recommendations of the grievance committee, which exhausted
Plaintiff's administrative remedies with SOU and OUS.

### Legal Standard

Where the plaintiff "fail[s] to state a claim upon which
relief can be granted," the court must dismiss the action.  Fed.
R. Civ. P. 12(b)(6).  To survive a motion to dismiss, the
complaint must allege "enough facts to state a claim to relief
that is plausible on its face." Bell Atlantic Corp. v. Twombly,
550 U.S. 544, 570 (2007). For the purpose of the motion to
dismiss, the complaint is liberally construed in favor of the
plaintiff and its allegations are taken as true. Rosen v.
Walters, 719 F.2d 1422, 1424 (9th Cir. 1983).  However, bare
assertions that amount to nothing more than a "formulaic
recitation of the elements" of a claim "are conclusory and not
entitled to be assumed true." Ashcroft v. Iqbal, 556 U.S. 662,
680-81 (2009).  Rather, to state a plausible claim for relief, the
complaint "must contain sufficient allegations of underlying
facts" to support its legal conclusions. Starr v. Baca, 652 F.3d

6 - ORDER

1202, 1216, <u>reh'g en banc denied,</u> 659 F.3d 850 (9th Cir. 2011).

**Discussion**

Defendant has moved to dismiss Plaintiff's Third and Fourth
Claims for Relief.

**I. Plaintiff's Third Claim**

Plaintiff's Third Claim, brought under 42 U.S.C. § 1983,
alleges that Defendant Cullinan denied Plaintiff procedural due
process in violation of the Fourteenth Amendment.

The Fourteenth Amendment provides that no state shall
"deprive any person of life, liberty, or property, without due
process of law." U.S. Const. amend XIV, § 1. A § 1983 claim
based upon procedural due process has three elements: 1) a liberty
or property interest protected by the Constitution; 2) a
deprivation of the interest by the government; and 3) lack of
process. <u>Portman v. Cnty. of Santa Clara</u>, 995 F.2d 898, 904 (9th
Cir. 1993).

Plaintiff's Third Claim alleges that Defendant Cullinan's
conduct deprived him of both a property and a liberty interest.

**A. Plaintiff's Property Interest**

Plaintiff alleges that by failing to provide him with proper
notice of his termination per the terms of his appointment,
Defendant Cullinan deprived Plaintiff of his property interest in
his continued employment for the 2012-2013 fiscal year.

The "root requirement" of the Due Process Clause is that an
individual "be given an opportunity for a hearing *before* he is

7 - ORDER

deprived of any significant property interest." Clements v. Airport Author. of Washoe Cnty., 69 F.3d 321, 331 (9th Cir. 1995). "The essential requirements of this pre-termination process are *notice* and *an opportunity to respond*." Id. at 332.

In this case, Plaintiff has alleged that his contract with SOU entitled him to automatic renewal unless proper notice was given within a certain time frame. Plaintiff alleges that his contract was terminated without proper notice and that the relief granted by his post-termination hearing was inadequate. I conclude that Plaintiff has alleged sufficient facts to support his claim for deprivation of a property right without due process.

### B. Plaintiff's Liberty Interest

Plaintiff alleges that Defendant Cullinan deprived him of a liberty interest by denying him the right to clear his name in a hearing prior to the release of stigmatizing information to the media. Plaintiff contends that the stigmatizing information damaged his reputation and prevented him from finding other employment in the southern Oregon media market.

A public employer may violate an employee's liberty interest by terminating the employee if "the employer makes a charge that might seriously damage the terminated employee's standing and associations in his community or imposes on a terminated employee a stigma or other disability that forecloses his freedom to take advantage of other employment opportunities." Tibbets v. Kulongoski, 567 F.3d 529, 536 (9th Cir. 2009)(internal quotes

8 - ORDER

omitted).  If the employer publicizes a charge that impairs the
employee's reputation for honesty or morality, then a liberty
interest is implicated and the employee must be allowed to refute
the stigmatizing charge.  Id.

In this case, Plaintiff alleges that Defendant Cullinan
publicized charges that Plaintiff had engaged in conflicts of
interest and breaches of his fiduciary duties when the Miller Nash
letter and the Review were made available to the media.  Plaintiff
alleges that those charges have impaired his reputation for
honesty and morality and that they have prevented him from taking
advantage of other employment opportunities in the southern Oregon
media market.  Plaintiff further alleges that he was not permitted
to refute the charges in his grievance hearing.

I conclude that Plaintiff has made a sufficient factual
showing to sustain his claim for deprivation of a liberty interest
without due process.

I also note that the Miller Nash letter of March 22, 2012
bears the signature of Defendants' counsel of record in this case.
Given the contents of the letter and its significance to
Plaintiff's claims, there seems to be a distinct possibility that
Defendants' counsel may be a witness in the case.  Although I have
no doubts as to counsel's skill and ability, I am forced to
question the propriety of his continued involvement in this case
as lead counsel for Defendants.

As I have concluded that Plaintiff has sufficiently alleged

9 - ORDER

violations of his due process rights, both in terms of his property interest and his liberty interest, Defendants' motion to dismiss Plaintiff's Third Claim is DENIED.

## II. **Plaintiff's Fourth Claim**

Plaintiff's Fourth Claim alleges, pursuant to 42 U.S.C. § 1983, that Defendant Pernsteiner violated Plaintiff's right to equal protection of the law under the Fourteenth Amendment.

The Equal Protection Clause provides that "all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). When the contested state action does not implicate fundamental rights or suspect classifications, a plaintiff may establish a "class of one" equal protection claim by demonstrating that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). The Supreme Court has held that the "class of one" theory of equal protection has no place in the public employment context. Engquist v. Oregon Dept. of Agric., 553 U.S. 591, 594 (2008). In making that determination, however, the Court distinguished between the government acting as a regulator and the government acting as an employer. Id. at 598-99.

In this case, Plaintiff alleges that Defendant Pernsteiner acted as a regulator when he endorsed a provision in the Settlement Agreement prohibiting JPRF from employing Plaintiff.

10 - ORDER

Plaintiff also alleges that his replacement was hired into the same dual role of ED to JPR and JPRF previously occupied by Plaintiff. I conclude that this sufficiently demonstrates that Plaintiff was intentionally treated differently from a similarly situated individual.

Defendants also challenge Plaintiff's assertion that there was no rational basis for the differing treatment. It is too early to make such a determination. Accordingly, I conclude that Plaintiff has alleged sufficient facts to support a claim for violation of his right to equal protection. Defendants' motion to dismiss Plaintiff's Fourth Claim is DENIED.

### III. Qualified Immunity

Defendants contend that Defendant Cullinan and Defendant Pernsteiner are entitled to qualified immunity.

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. al-Kidd, 131 S.Ct. 2074, 2080 (2011). The key inquiry is whether the official had "fair warning" that his conduct deprived the injured party of a constitutional right. Hope v. Pelzer, 536 U.S. 730, 739-740 (2002).

As set forth above, I have already concluded that Plaintiff has pled facts demonstrating a violation of his due process and

11- ORDER

equal protection rights.  The right to due process with regard to liberty and property interests in the public employment context is well established.  See Bd. of Regents of State Coll. v. Roth, 408 U.S. 564 (1972).  With regard to Plaintiff's equal protection claim, it is likewise clearly established that governmental entities should not used their regulatory power to single out individuals for different treatment without a rational basis.  See Grabhorn, Inc. v. Metro. Serv. Dist., 624 F. Supp. 2d 1280, 1290-91 (D. Or. 2009).  Therefore, on the basis of the facts alleged in the First Amended Complaint, I conclude that Defendants had "fair warning" that their conduct was unconstitutional.

Accordingly, Defendants are not entitled to qualified immunity and Defendants' motion to dismiss on that basis is DENIED.

### Conclusion

Defendants' Motion to Dismiss Plaintiff's Third and Fourth Claims for Relief (#39) is DENIED.  This matter is set for trial September 23, 2014.  The Court will issue a more detailed trial management order following a Rule 16 Conference.

'IT IS SO ORDERED.

DATED this ___27___ day of January, 2014.

OWEN M. PANNER
U.S. DISTRICT JUDGE

12 - ORDER